UNITED STATES OF AMERICA,  :

      Respondent  :

    v.  :     No. 03-CR-73-RAW

EDWARD LEON FIELDS, JR.,  :

      Petitioner.  :

## REPLY IN SUPPORT OF MOTION AND BRIEF TO VACATE CONVICTIONS AND SENTENCES PURSUANT TO 28 U.S.C. § 2255

On May 28, 2020, after granting Petitioner authorization, the Tenth Circuit forwarded his successor § 2255 petition to this Court for its consideration. *See* ECF No. 305-1 at 4-26 (Ex. A). The Government filed a Response on June 17, 2020. ECF No. 315. Petitioner now files this Reply.

### A.    MR. FIELDS'S *DAVIS* CLAIM (CLAIM I) IS NOT PROCEDURALLY BARRED.

The Government does not dispute that Mr. Fields has satisfied the requirements under § 2255 for his *Davis*[1] claim. However, the Government argues that he procedurally defaulted the claim by failing to raise it on direct appeal, and that he can establish neither prejudice nor actual innocence[2] to excuse the default. *Id*. at 4-5. Mr. Fields's claim is based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). Such a claim is cognizable in a second or

---

[1] *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019) (holding that § 924(c)'s residual clause is unconstitutionally vague for the same reasons that the ACCA's residual clause was deemed unconstitutional in *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015)).

[2] However, the government acknowledges: "If Fields could demonstrate that his predicate crime did not satisfy the elements clause of § 924, the law would presume him 'actually innocent' of the charges and require a vacatur of the convictions." ECF No. 315 at 10.

successive petition according to the plain language of the federal habeas statute. *Id.* There is no requirement for Mr. Fields to have raised his current *Davis* claim on direct appeal. Nevertheless, to the extent this claim is defaulted, Mr. Fields can show cause and prejudice to overcome any such default. *See United States v. Copeland*, 921 F.3d 1233, 1240 n.4 (10th Cir. 2019) ("[E]ven assuming the procedural-default rule applies, a *Johnson* claim was not reasonably available during the time when [the petitioner] could have filed a direct appeal, and this is sufficient to establish cause. Moreover, if [the petitioner] is correct regarding his *Johnson* claim . . . . [he] has demonstrated actual prejudice." (last alteration in original)(internal quotations and citation omitted)); *United States v. Snyder*, 871 F.3d 1122, 1127-28 (10th Cir. 2017); *see also* ECF No. 315 at 5 (Government conceding Mr. Fields can demonstrate cause based on *Davis*).

The Government argues Mr. Fields cannot establish prejudice to excuse the default because his predicate offenses qualify as crimes of violence under 18 U.S.C. § 924(c)'s surviving statutory definition, i.e., its elements clause. ECF No. 315 at 5. Mr. Fields has shown that first degree murder is not categorically a crime of violence under the elements clause. *See infra* § B.

**B. MR. FIELDS'S § 924(C) CONVICTIONS MUST BE VACATED BECAUSE 18 U.S.C. § 1111(A) IS NOT A DIVISIBLE STATUTE OF CONVICTION AND THUS FIRST DEGREE MURDER CANNOT CATEGORICALLY QUALIFY AS A CRIME OF VIOLENCE PURSUANT TO § 924(C)(3).**

The Government does not dispute that if § 1111(a) is indivisible and the categorical approach is used, the crime of first degree murder does not satisfy § 924(c)(3)'s elements clause. In particular, it does not dispute Mr. Fields's contention that felony murder under the statute does not require the use of violent physical force. *See* ECF No. 305-1 at 19-22 (Petitioner's successive motion). Furthermore, the only argument the Government makes with respect to the statute's inclusion of reckless or accidental conduct is that "the issue does not arise here," despite recognizing the Supreme Court has indicated it will resolve a circuit split on whether reckless

conduct can amount to a crime of violence in *Borden v. United States*, No. 19-5410. ECF No. 315 at 3 n.1.

Instead, the Government's primary argument regarding both prejudice to excuse default and the underlying merits of Mr. Fields's *Davis* claim is based upon the assumption that § 1111(a) is a divisible statute with respect to the different "varieties" of first degree murder. *Id.* at 6-7. The Government maintains this by equating the varieties with alternative *elements* rather than *means* of commission, and framing Mr. Fields's crime as "premeditated first degree murder," a crime distinct from first degree felony murder. *Id.*[3] It does so in an effort to avoid the application of the categorical approach in favor of the modified categorical approach. *Descamps v. United States*, 570 U.S. 254, 258 (2013) ("[S]entencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements.").

Yet, the Government does not cite any authority directly on point, particularly with respect to § 1111(a). *See Descamps*, 570 U.S. at 259 (modified categorical approach not applicable where California burglary statute did not require unlawful entry like the generic offense, despite prosecutor proffering at the plea hearing that petitioner's crime involved an unlawful entry); *United States v. Pam*, 867 F.3d 1191, 1205 (10th Cir. 2017) (modified categorical approach applicable to statute describing three alternative crimes that carried varying punishments, making the statutory alternatives *elements*), and *United States v. Thompson*, 720 F. App'x 492, 494 n.2 (10th Cir. 2018) (unpublished) (noting state's first degree murder statute was divisible where it

---

[3] Courts examine whether different "variations" of a crime carry different penalties to assess divisibility. *See Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016). All of the enumerated statutory means of committing first degree murder carry the same range of penalties. § 1111(b).

does not identify a mens rea element except to provide three examples). In assuming § 1111(a)'s divisibility, the Government ignores Supreme Court precedent counseling the opposite.

In *Mathis*, the Supreme Court analyzed a law that "enumerate[d] various factual means of committing a single element." 136 S. Ct. at 2249. In holding the lower court erred in applying the modified categorical approach to determine the means by which the defendant committed his prior crimes, the Court cautioned that a statute's "itemized construction [of alternative possible means of commission] gives a sentencing court no special warrant to explore the facts of an offense, rather than determine the crime's elements and compare them with the generic definition." *Id.* at 2251; *see id.* ("All that counts under the [ACCA] . . . are the elements of the statute of conviction"; the particular facts underlying the convictions "ha[ve] no  relevance to whether that offense is an ACCA predicate." (internal quotations and citation omitted)). Particularly relevant to the present case, the Supreme Court recognized:

> That rule can seem counterintuitive: In some cases, a sentencing judge knows (or can easily discover) that the defendant carried out a "real" burglary, even though the crime of conviction also extends to other conduct. *No matter*. Under ACCA, *Taylor* [*v. United States*], stated, it is impermissible for "a particular crime [to] sometimes count towards enhancement and sometimes not, depending on the facts of the case." *Id.*, at 601, 110 S. Ct. 2143. Accordingly, a sentencing judge may look only to "the elements of the [offense], not to the facts of [the] defendant's conduct." *Ibid*.
>
> . . .
>
> That means a judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense. . . . [S]o too he is barred from making a disputed determination about "what the defendant and state judge must have understood as the factual basis of the prior plea" . . . .

*Mathis*, 136 S. Ct. at 2251-52 (some citations omitted). This is the approach the Government urges this Court to take.

Likewise, in *Schad v. Arizona*, the Supreme Court confronted an almost identical statutory interpretation question with that presented by § 1111(a), with respect to elements versus means. The case "involve[d] a general verdict predicated on the possibility of combining findings of what can best be described as alternative mental states, the one being premeditation, the other the intent required for murder combined with the commission of an independently culpable felony." 501 U.S 624, 632 (1991). The Court explained that "the Arizona Supreme Court ha[d] effectively decided that, under state law, premeditation and the commission of a felony are not independent elements of the crime, but rather are mere means of satisfying a single *mens rea* element." *Id.* at 637; *id.* at 636 ("[L]egislatures frequently enumerate alternative means of committing a crime without intending to define separate elements or separate crimes."). To determine when means become elements (and vice versa), the Court "look[s] to both history and wide practice as guides to fundamental values, as well as to narrower analytical methods of testing the moral and practical equivalence of the different mental states that may satisfy the *mens rea* element of a single offense." *Id.* at 637.

> [I]t is significant that Arizona's equation of the mental states of premeditated murder and felony murder as species of the blameworthy state of mind required to prove a single offense of first-degree murder finds substantial historical and contemporary echoes. At common law, murder was defined as the unlawful killing of another human being with "malice aforethought." The intent to kill and the intent to commit a felony were alternative aspects of the single concept of "malice aforethought." Although American jurisdictions have modified the common law by legislation classifying murder by degrees, the resulting statutes have in most cases retained premeditated murder and some form of felony murder (invariably including murder committed in perpetrating or attempting to perpetrate a robbery) as alternative means of satisfying the mental state that first-degree murder presupposes.

*Id.* at 640-41 (internal citations omitted); *id.* at 641-42 (citing cases showing "sufficiently widespread acceptance of the two mental states as alternative means of satisfying the *mens rea* element of the single crime of first-degree murder"); *cf. Spears v. Mullin*, 343 F.3d 1215, 1236

(10th Cir. 2003) (noting Oklahoma courts have characterized malice aforethought murder and felony murder as different theories for the same general offense of first degree murder).

*Mathis* and *Schad* govern § 1111(a)'s divisibility. Based on their reasoning and the statute's explicit enumeration of elements – (1) the unlawful killing of a human being; (2) with malice aforethought; (3) within the special maritime and territorial jurisdiction of the United States, *see, e.g., United States v. Santiago*, 41 F. Supp. 3d 999, 1001 (D. Colo. 2014) (listing these "essential elements" for "[t]he crime of first degree murder as proscribed by 18 U.S.C. § 1111") – § 1111(a) is indivisible. Thus whether a conviction under § 1111(a) qualifies as a "crime of violence" is purely a question of law. *See Descamps*, 570 U.S. at 258 ("[C]ourts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements."); *United States v. Degeare*, 884 F.3d 1241, 1248 (10th Cir. 2018) ("[U]nless we are certain that a statute's alternatives are elements *rather* than means, the statute isn't divisible and we must eschew the modified categorical approach.").

The Government's recitation of the factual background and reliance on Mr. Fields's plea colloquy and his sentencing jury's findings, ECF No. 315 at 1-2, 7-8, serve no legitimate purpose. Nevertheless, assuming arguendo that the Court applies the modified categorical approach, it is still not clear which "variation," assuming each is a separate offense, Mr. Fields was necessarily convicted of and therefore it cannot be said that his predicate offense was categorically a crime of violence.

First, as the Government points out, the indictment does not explicitly specify a felony murder theory, *id.* at 7, but it also broadly refers to the predicate crime as "First Degree Murder" committed "with premeditation *and* malice aforethought," ECF No. 315-1 at 2, 3-4. A murder committed with "malice aforethought" can be committed a number of ways, including "committed

in the perpetration of, or attempt to perpetrate, . . . robbery." § 1111(a); *United States v. (Dominic) Pearson*, 159 F.3d 480, 485 (10th Cir. 1998) ("[T]o prove the 'malice aforethought' *element . . .* , the prosecution only need show commission of the specified felony." (emphasis added)).

Second, the plea colloquy – which the Government relies on to support the statute's divisibility, ECF No. 315 at 7-8 – does not offer any more clarity either. When asked to state the substance of the charges against Mr. Fields, the Government states: "Counts 1 and 3 allege Murder in the First Degree in violation of Title 18, United States Code, Sections 1111(a) and (b) and Section 7(3) and 13." ECF No. 315-2 at 13. While the Court identifies the elements of Counts 1 and 3 and includes that the killings were premeditated, it also includes separately, that Mr. Fields "killed the victims with malice aforethought," which it defines as meaning "either to kill another person deliberately and intentionally *or to act with callous and wanton disregard for human life*." *Id.* at 21 (emphasis added).

The Court never reads the indictment, and it never identifies the crime of violence for the § 924(c) counts beyond "the crime of First Degree Murder." *Id.* at 21; *cf.* ECF No. 315 at 10 (Government noting Fields did not "acknowledge that the first degree murders satisfied the elements clause of § 924"). It is not clear from the colloquy that Mr. Fields is not necessarily pleading to first degree murder on a felony murder theory given the robbery charge included in the discussion. The factual basis for Mr. Fields's plea included: "On July 10th, 2003, I caused the death of Charles and Shirley Chick. I deliberately killed them with a firearm I was carrying by shooting them both. *I did this during the course of a robbery*." ECF No. 315-2 at 25 (emphasis added).

Finally, the Government's reliance on the jury's findings at the penalty phase, a proceeding that took place after Mr. Fields's plea, can have no bearing on deciphering elements of a crime to

which Mr. Fields already had pled. Citing *Lockett v. Trammell*, 711 F.3d 1218, 1253 (10th Cir. 2013), and *United States v. Higgs*, 353 F.3d 281, 297 (4th Cir. 2003), the Government argues that death-eligibility determinations are "the functional equivalent of [an offense's] elements." ECF No. 315 at 8. *Lockett* and *Higgs* say no such thing. The claims in those cases were arguing for the extension of *Ring/Apprendi*[4] to a jury's weighing of aggravating and mitigating circumstances, 711 F.3d at 1252-54, and a jury's findings of the intent and aggravating factors necessary to render a defendant death eligible under the Federal Death Penalty Act, 353 F.3d at 298. The cases do not address the Government's contention that post hoc findings of a jury in a sentencing phase can prove – to the exclusion of other possibilities – the necessary elements under which a defendant pled guilty.

The Government urges the Court to do exactly what the Supreme Court has cautioned against. The modified categorical approach "is not to be repurposed as a technique for discovering whether a defendant's [predicate offense], even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements [clause]." *Mathis*, 136 S. Ct. at 2251-54. The question is not whether the facts of Mr. Fields's case satisfied § 1111(a) as it related to one means of proving the required mens rea, but whether a conviction under § 1111(a) that rests upon the "least of th[e] acts criminalized," *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) (internal quotations omitted), can categorically satisfy § 924(c)'s elements clause. This inquiry is by its nature somewhat "theoretical," ECF No. 315 at 8, and explicitly divorced from the facts of the individual case.

---

[4] *Ring v. Arizona*, 536 U.S. 584, 589 (2002); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

**C.   MR. FIELDS'S PLEA CLAIM (CLAIM II) WAS AUTHORIZED BY THE CIRCUIT, IS NOT PROCEDURALLY BARRED, AND HAS MERIT.**

Mr. Fields cannot have knowingly and voluntarily entered a plea based in part on two invalid § 924(c) counts. The Government contends that Mr. Fields "does not have permission from the Court of Appeals to pursue" this claim, as it "facially exceeds the scope of the issues the Tenth Circuit permitted this Court to reach." *Id.* at 9-10 (citing *United States v. (Roderick) Pearson*, 940 F.3d 1210, 1216 (11th Cir. 2019), and *Ochoa v. Sirmons*, 485 F.3d 538, 541 (10th Cir. 2007)).[5] It neglects to mention key distinctions in *Pearson* driving the court's holding that the district court improperly considered issues in a successive petition that fell outside the scope of the permission granted by the court of appeals.  In *Pearson*, the petitioner sought permission for a successive § 2255 petition based on *Johnson v. United States*, regarding one of his multiple convictions. The court of appeals authorized the successor, the district court granted the petitioner relief, and at his resentencing, he raised a "brand new § 2255 challenge," regarding two other convictions, which had not been raised in his motion to the court of appeals. 940 F.3d at 1212, 1214-15.

Here, the court of appeals "direct[ed] the Clerk pursuant to 28 U.S.C. § 1631 to transfer the now-authorized successive § 2255 motion to the district court for the Eastern District of Oklahoma for filing as an authorized successive § 2255 motion." Order at *2, *In re Fields*, No. 20-7026 (10th Cir. May 28, 2020).[6] This directive did not include any reservations or limitations

---

[5] *Ochoa*'s proposition that substantively new claims in successive 28 U.S.C. § 2254 petitions must satisfy 28 U.S.C. § 2244(b) authorization is not in dispute and does not implicate Mr. Fields's claim, which stems from *Davis* and was included in the motion the court of appeals authorized and forwarded to this Court without reservations or limitations.

[6] Consistent with such directive and authorization, this Court ordered Petitioner to provide to it a bound copy of the pleading and exhibits, which "shall be EXACT duplicates of the pleading and/or exhibits AFTER said pleading(s) was filed with the Court . . . . Do not reorganize the document or insert other separately docketed items." ECF No. 308.

regarding Mr. Fields's guilty plea claim, which was in the proposed successive petition attached to the motion for authorization and which is properly before this Court.

As with Fields's *Davis* claim, the Government argues Claim II is defaulted, acknowledges that "[a]ssuming the novelty of the claim's premise—the *Davis* decision—supplies cause for the oversight [in not raising the claim on direct appeal]," and argues Mr. Fields cannot demonstrate prejudice. ECF No. 315 at 10. This is based on the assumption that first degree murder under § 1111 is a crime of violence under the elements clause of § 924. Petitioner agrees that this claim is dependent on the outcome of Mr. Fields's *Davis* claim (Claim I). *See also id.* (arguing "Fields cannot show that he lacked a meaningful understanding of § 924, given that the alleged predicates satisfied the statute's elements clause").

The Government alleges that Mr. Fields "provides no basis in fact, law, or reason for this Court to conclude that any imagined misapprehension of the § 924 charges infected his pleas to the remaining counts," because "his convictions and sentences on the remaining counts did not hinge on any sentencing contingencies." *Id.* at 11. The Government's reference to interdependence at sentencing ignores the inherent interdependence of multiple counts a defendant faces and his decision whether to plead guilty, and reframes Mr. Fields's argument as one related to the sentencing package doctrine. Mr. Fields's plea should be rescinded – not because of the interdependence of the counts at sentencing, but because the errors regarding his sentencing exposure, assuming he was actually innocent of two of the five charges, affected his "assessment of his strategic position" and "prevent[ed him] from engaging in the calculus necessary to enter a plea on which [a] Court can rely in confidence." *United States v. Lockhart*, 947 F.3d 187, 197 (4th Cir. 2020) (internal quotations and citations omitted); *id.* ("Rather than accepting a plea with little

10

benefit, Lockhart could have exercised his right to require the government to prove at trial all the elements of the offense beyond a reasonable doubt.").

WHEREFORE, Mr. Fields respectfully requests that the Court grant him a writ of habeas corpus to vacate Mr. Fields's convictions and sentences.

Respectfully submitted,

/s/ Katherine Ensler
HUNTER LABOVITZ
Pa. Bar. No. 204760
KATHERINE ENSLER
Pa. Bar No. 319029
Assistant Federal Defenders
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut St., Ste. 545W
Philadelphia, PA 19106
Telephone: (215) 928-0520

Date: July 1, 2020                    *Attorneys for Movant/Petitioner*

**CERTIFICATE OF SERVICE**

I, Katherine Ensler, hereby certify that on this 1st day of July, 2020, I submitted the foregoing Reply in Support of Motion and Brief to Vacate Convictions and Sentences Pursuant to 28 U.S.C. § 2255 via ECF to:

Jeffrey B. Kahan
Deputy Chief, Capital Case Section
U.S. Department of Justice
Jeffrey.Kahan@usdoj.gov

Christopher J. Wilson
Assistant United States Attorney
Eastern District of Oklahoma
Chris.Wilson@usdoj.gov

Linda Epperley
Assistant United States Attorney
Eastern District of Oklahoma
Linda.Epperley@usdoj.gov

/s/ Katherine Ensler
KATHERINE ENSLER