| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 03-CR-73-RAW |
| | : | |
| Respondent, | : | |
| | : | |
| v. | : | |
| | : | |
| EDWARD LEON FIELDS, JR., | : | |
| | : | |
| Petitioner. | : | |
| | : | |

**PETITIONER'S MOTION FOR DISCOVERY AND
CONSOLIDATED SUPPORTING MEMORANDUM OF LAW**

Petitioner Edward Leon Fields, Jr., by and through undersigned counsel, and

pursuant to this Court's Order dated November 4, 2020 (Doc. 322), hereby moves

for discovery. This motion is being made pursuant to Rule 6 of the Rules

Governing Section 2255 Cases; Rules 26, 34, and 35 of the Federal Rules of Civil

Procedure; and the Fifth and Eighth Amendments to the United States

Constitution. Based on the authority and good cause set out in the Motion and

consolidated Memorandum of Law, Petitioner is entitled to discovery and requests

this Court enter an Order permitting counsel to conduct the discovery requested

below.

Pursuant to Local Criminal Rule 12.1(B), undersigned counsel consulted by e-mail with counsel for the Government, Christopher J. Wilson and Jeffrey B. Kahan, who advised that the Government does not object to this motion.[1]

In support of this motion, Mr. Fields submits the following:

**RELEVANT PROCEDURAL HISTORY**

1. Mr. Fields is a federal prisoner under a death sentence. He is pursuing post-conviction relief under 28 U.S.C. § 2255 following a guilty plea and death sentence at trial, and affirmance on appeal.

2. Presently, this case is before the Court following the United States Court of Appeals for the Tenth Circuit's opinion reversing in part and affirming in part this Court's denial without a hearing of Mr. Fields's motion under 28 U.S.C. § 2255. The Tenth Circuit remanded the case for an evidentiary hearing on Mr. Fields's post-conviction claim that trial counsel was ineffective for failing to adequately investigate and present evidence of his organic brain damage at trial and, if necessary, reconsideration of Mr. Fields's cumulative error claim. *United States v. Fields*, 949 F.3d 1240 (10th Cir. 2019).[2]

---

[1] Counsel for the Government did note that they do not acquiesce with all of the factual and legal arguments within the motion.

[2] The Tenth Circuit held that "[i]f, on remand, the district court ultimately denies that claim of ineffective assistance following an evidentiary hearing, it will in turn have to reconsider Fields's claim of cumulative error." *Fields*, 949 F.3d at 1273. The Tenth Circuit further clarified that proper reconsideration of the cumulative error claim would, in turn, require assessment of the two ineffective

3. Following a status conference, the Court entered a scheduling order on November 4, 2020, establishing deadlines for discovery motions and other pre-hearing matters.

4. The Court ordered the parties to file any motions for authorization to conduct discovery under Rule 6(a) of the Rules Governing § 2555 Cases and the Federal Rules of Civil Procedure by December 1, 2020.

## ARGUMENT

**I. THE LAW GOVERNING DISCOVERY IN HABEAS CORPUS PROCEEDINGS.**

5. In a proceeding under 28 U.S.C. § 2255, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rules Governing Section 2255 Cases in the United States District Courts, Rule 6(a).

6. The United States Supreme Court defined the "good cause" standard in *Bracy v. Gramley*, 520 U.S. 899 (1997): a habeas petitioner has shown good cause for discovery when "specific allegations before the court show reason to

---

assistance of counsel claims it had resolved on *Strickland*'s prejudice prong "(i.e., counsel's failure to present the social history evidence and counsel's failure to object to the prosecutor's allegedly improper closing argument)" as well as "the claim directly challenging the allegedly improper remark made by the prosecutor during closing argument." *Id.*

believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Id.* at 908-09 (emphasis added) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

7.     When a habeas petitioner shows good cause for the discovery sought, "it is the duty of the courts" to grant the petitioner's discovery requests in order "to provide the necessary facilities and procedures for an adequate inquiry." *Id.* at 909 (emphasis added) (quoting *Harris*, 394 U.S. at 300).

## II.     MR. FIELDS HAS DEMONSTRATED GOOD CAUSE ENTITLING HIM TO DISCOVERY UNDER THE GOVERNING LEGAL STANDARDS.

8.     In the following subsections, Mr. Fields lists his discovery requests, how they are relevant to the issues before the Court, and good cause supporting the requests.

### A.     Request for Expert Access to Petitioner.

9.     In anticipation of the upcoming evidentiary hearing, undersigned counsel wish to have Mr. Fields examined by four expert witnesses: neuropsychiatrist George W. Woods, Jr., M.D., psychiatrist Bradley D. Grinage, M.D., and Michael Gelbort, Ph.D.—each of whom evaluated Mr. Fields prior to trial—and Daniel A. Martell, Ph.D., whom evaluated Mr. Fields during post-conviction proceedings in 2010.

10. Dr. Woods initially interviewed Mr. Fields in August and October of 2004 at the request of Mr. Fields's trial counsel. These interviews formed the basis of Dr. Woods's June 25, 2005 report as well as his testimony at Mr. Fields's trial.

11. When presented with evidence of Mr. Fields's brain damage during the course of the § 2255 proceedings, Dr. Woods opined that the brain damage evidence would not only have been compelling mitigation in its own right but it would also have been highly relevant to the manic flip defense to which Dr. Woods testified at trial. *See* Declaration of George W. Woods, M.D., Mar. 28, 2010, ¶¶ 7, 12. (2255 Doc. 106-3).[3]

12. Dr. Grinage initially examined Mr. Fields in June of 2005 at the request of Mr. Fields's trial counsel. This examination formed the basis of Dr. Grinage's June 24, 2005 report as well as his testimony at Mr. Fields's trial.

13. When presented with evidence of Mr. Fields's brain damage during the course of § 2255 proceedings, Dr. Grinage opined that the brain damage evidence would have explained Mr. Fields's behaviors that the Government alleged were products of his psychopathy, and also could have been offered as a factor that exacerbated Mr. Fields's bipolar disease, a diagnosis to which Dr.

---

[3] "2255 Doc." refers to documents in Mr. Fields's related § 2255 case in the Eastern District of Oklahoma, Case No. 10-cv-115-RAW.

Grinage testified at trial. *See* Declaration of Bradley D. Grinage, M.D., Mar. 29, 2010, ¶ 12 (2255 Doc. 106-4).

14. At the request of Mr. Fields's trial counsel, Dr. Gelbort interviewed Mr. Fields and administered a battery of neuropsychological tests to Mr. Fields in August of 2004. Based on the results of this testing, Dr. Gelbort concluded that Mr. Fields suffered from brain dysfunction and cognitive impairments focused in the frontal lobes. In advance of the trial, Dr. Gelbort relayed these findings to trial counsel. *See* Declaration of Michael Gelbort, Ph.D., Sept. 30, 2015, ¶¶ 6, 10) (2255 Doc. 106-35). Trial counsel, however, did not call Dr. Gelbort to testify at trial or otherwise present his findings through the experts who did testify. *See* Grounds in Supp. of Am. Mot. Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence, ¶¶ 31, 37, 48 (2255 Doc. 106).

15. Dr. Martell examined Mr. Fields in March of 2010 at the request of Mr. Fields's post-conviction counsel. This examination formed the basis of Dr. Martell's April 1, 2010 report.

16. Based on his neuropsychological testing, Dr. Martell concluded that Mr. Fields had moderate to severe brain damage, that he had experienced a severe decline in functioning in the years following the trial, and that the neuropsychological data from Dr. Gelbort and the government's trial expert, Dr. J. Randall Price, indicated impairments in Mr. Fields's cognition and behavior at the

6

time of trial. *See* Report of Daniel A. Martell, Ph.D., Apr. 1, 2010, at 10, 17 (2255 Doc. 106-35).

17.     Trial counsel's failure to fully investigate and present evidence regarding Mr. Fields's brain damage at trial is the primary focus of the Tenth Circuit's remand instruction. *Fields*, 949 F.3d at 1253-59. As such, undersigned counsel intends to present Drs. Woods, Grinage, Gelbort, and Martell as witnesses at the evidentiary hearing.

18.     Over ten years have passed since Drs. Woods, Grinage, and Martell offered their declarations (or report) in the § 2255 proceedings and over sixteen years have passed since Dr. Gelbort evaluated Mr. Fields. Each expert wishes to meet with Mr. Fields in order to refamiliarize themselves with Mr. Fields, their initial evaluations, and, for Drs. Woods and Grinage, the opinions offered in their post-conviction declarations. Meeting with Mr. Fields is also important to each doctor's ability to respond to testimony from experts the Government intends to present; as counsel understands, the Government will request that its neuropsychologist, Dr. James Seward, who saw Mr. Fields in 2013, re-evaluate Mr. Fields before the hearing, and will also request that a psychiatrist evaluate Mr. Fields before the hearing.

19.     The ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, 10.11(D) & (F)(2) (rev. ed. 2003),

7

provides that "counsel *at every stage of the case* have a continuing duty to investigate issues bearing upon penalty and to seek information that supports mitigation or rebuts the prosecution's case in aggravation," including the client's mental health. Likewise, Guideline 10.15.1(E)(4) requires that post-conviction counsel "continue an aggressive investigation of all aspects of the case." It is undersigned counsel's professional opinion that these evaluations are an appropriate step in preparing for the evidentiary hearing ordered by the Tenth Circuit.

20.     Drs. Woods, Grinage, Gelbort, and Martell will be unable to conduct evaluations without an order from this Court permitting them access to Mr. Fields at USP-Terre Haute. USP-Terre Haute has refused to allow expert evaluations without a court order. Mr. Fields, therefore, respectfully requests that this Court enter an order directing USP-Terre Haute to permit Drs. Woods, Grinage, Gelbort, and Martell to access the institution, at a time convenient to the institution and each doctor, so that each expert may evaluate Mr. Fields.[4]

---

[4] Undersigned counsel is not requesting funding from this Court for expert witness expenses. Undersigned counsel's office is recognized by the Administrative Office of the United States Courts as a Community Defender Organization pursuant to 18 U.S.C. § 3006A of the Criminal Justice Act. As such, it receives a sustaining grant from the Administrative Office of the United States Courts to represent death-sentenced prisoners in proceedings pursuant to 28 U.S.C. § 2255.

**B.     Request for Production of Records Provided to, Relied upon, or Produced by the Government's Mental Health Experts.**

21.     The Government previously engaged the services of neuropsychologist Dr. James Seward to contest Mr. Fields's allegations and evidence that his trial counsel was ineffective for failing to fully develop and present evidence that he suffers from brain damage. Also, based on discovery consultation between the parties, counsel understand that the Government intends to retain the services of a psychiatrist to evaluate Mr. Fields prior to the hearing.

22.     Mr. Fields seeks access to the records that the Government provided to these experts as well as any additional records upon which they relied when formulating their opinions. Mr. Fields also requests production of the experts' final report(s) as well as any notes, interview notes, raw test data, normative data, diagnostic criteria that the experts took or will take during interviews of Mr. Fields and/or witnesses.

23.     Mr. Fields must have access to these records in order to fully understand the foundation for the experts' opinions and effectively prepare cross-examination of the Government's experts as well as rebuttal testimony. Therefore, good cause exists to order the Government to produce the records it provided to its mental health experts, the documents upon which such experts relied when formulating their opinions, as well as any as well as any notes, interview notes, raw

test data, normative data, and diagnostic criteria that the Government experts took or relied on during interviews of Mr. Fields and/or witnesses.

**C.      Request for Mr. Fields's Bureau of Prison Records.**

24.     Mr. Fields seeks permission to subpoena the United States Bureau of Prisons ("BOP") for all records relating to Mr. Fields's medical or mental health treatment and evaluation. Undersigned counsel is aware that the Government also intends to seek permission to subpoena the BOP for the same records but believes it best protects Mr. Fields's interests to request these records independently.

25.     In an effort to efficiently and cooperatively resolve this mutual discovery request, counsel for the Government conveyed that they have no objection to producing the BOP records they receive to undersigned counsel. However, counsel for the Government also indicated that any such production would be subject to BOP approval. Therefore, out of an abundance of caution, Mr. Fields also seeks permission to subpoena the BOP for his mental health and medical records.

26.     The requested records related to Mr. Fields medical and mental health are relevant to the remand question before the Court. As such, good cause exists to permit Mr. Fields to subpoena the BOP for his mental health and medical records.

WHEREFORE, Petitioner Edward Fields respectfully requests that this Court issue an order: (1) directing the administration at the USP-Terre Haute to

permit Drs. Woods, Grinage, Gelbort, and Martell to meet with and evaluate Mr. Fields at a time convenient to the institution and each of the experts; (2) directing production of the records that the Government provided to its mental health experts, additional records upon which the experts relied when formulating their opinions, the experts' final report(s) and any notes, interview notes, raw test data, normative data, diagnostic criteria that the experts took or will take during interviews of Mr. Fields and/or witnesses; and (3) directing the BOP to produce all records in its possession that pertain to Mr. Fields's medical and mental health.

A proposed order has been submitted to the Clerk.

Respectfully submitted,

/s/ Hunter Labovitz
Hunter Labovitz
Katherine Ensler
Federal Community Defender Office
 for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone: (215) 928-0520
hunter_labovitz@fd.org

Dated:     December 1, 2020
           Philadelphia, PA

**CERTIFICATE OF SERVICE**

I, Hunter Labovitz, hereby certify that on this 1st day of December, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the Court's electronic case filing system. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Christopher J. Wilson, Attorney for Respondent
Jeffrey B. Kahan, Attorney for Respondent

/s/ Hunter Labovitz
Hunter Labovitz