**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **EDWARD LEON FIELDS, JR.,** | ) |
| | ) |
| *Petitioner*, | ) |
| | ) |
| **v.** | )    **Case No. CV-10-00115-RAW** |
| | )    **Criminal Case No. CR-03-73-RAW** |
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| *Respondent.* | ) |

## MOTION FOR DISCOVERY

**COMES NOW**, Respondent, United States of America, by and through undersigned

counsel, and, pursuant to this Court's Order (Doc. 322) and Rule 6 of the Rules Governing §

2255 Proceedings, moves for discovery in anticipation of the evidentiary hearing ordered by the

Tenth Circuit Court of Appeals. Pursuant to Local Rule 12.1, the United States consulted with

counsel for Fields. Counsel's comments, and the government's responses appear below.

## PROCEDURAL HISTORY

On August 1, 2003, a federal grand jury for this district returned an indictment that

charged Fields with four non-capital offenses and two counts of the death-eligible crime of first

degree murder. The government subsequently filed a notice of intent to seek the death penalty

for the murders. On June 30, 2005, Fields pleaded guilty to all counts. On July 22, 2005,

following a penalty-phase trial, a jury recommended the death penalty for both murders, which

this Court later imposed. The Tenth Circuit affirmed the judgment in full. *United States v.

Fields*, 516 F.3d 923 (10th Cir. 2008). On April 6, 2010, Fields filed a Motion Under 28 U.S.C.

§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  2255 Doc. 1.[1]

On December 15, 2016, this Court denied relief (2255 Doc. 125), and Fields appealed to the

Tenth Circuit Court of Appeals (2255 Doc. 131).  The Tenth Circuit affirmed in part and

reversed in part, remanding for an evidentiary hearing on Fields' claim that his trial counsel was

ineffective for failing to adequately investigate and present at trial evidence of his organic brain

damage.  *United States v. Fields*, 949 F.3d 1240, 1243 (10th Cir. 2019).

On November 4, 2020, following a telephonic status conference, this Court issued a

scheduling order, imposing a December 1, 2020 deadline for any discovery motions in

anticipation of the evidentiary hearing.  Doc. 322.  This Motion follows.

## I. THE COURT SHOULD ORDER FIELDS TO UNDERGO MENTAL HEALTH EVALUATIONS BY THE GOVERNMENT'S EXPERTS

As noted, the evidentiary hearing concerns Fields' allegation that he suffers from brain

damage.   In support of those arguments, Fields has proffered declarations from a

neuropsychologist, Daniel Martell, and a neuropsychiatrist, George Woods.  The government

seeks to place itself on equal evidentiary footing with Fields by obtaining up-do-date evaluations

of his conditions by mental health professionals like those he intends to present at the hearing.

The All Writs Act, 28 U.S.C. § 1651 empowers federal courts to permit discovery as

justified by showings of "good cause."  *See*, Rule 6 of the Rules foll. 28 U.S.C. § 2255 Cases;

*Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997).  "[T]he scope and extent of such discovery is . .

. confided to the discretion of the District Court."  *Id*. at 909 (1997).

The Supreme Court has said that good cause exists when a court "considers that

[discovery] is necessary . . . in order that a fair and meaningful evidentiary hearing may be held."

---

[1] "2255 Doc." refers to the docket in Eastern District of Oklahoma case no. 10-cv-115-RAW.

*Harris v. Nelson*, 394 U.S. 286, 300 (1969). The Court further explained that petitioners cannot establish good cause to pursue fantastical, paranoid, or speculative allegations. *Id*. (discussing "fantasy" and "paranoia"); *Bracy*, 520 U.S. at 909 (concerning speculative matters). But good cause does exist where "specific allegations . . . show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Harris*, 394 U.S. at 300. As such, good cause exists where a petitioner "has set forth good reason to believe he may be able to demonstrate he is entitled to relief." *Curtis v. Chester*, 626 F.3d 540, 549 (10th Cir. 2010); *see Bracy*, 520 U.S. at 909. Applying the converse of that rule, the government demonstrates good cause when it establishes reason to believe that additional information will permit it to show the petitioner is *not* entitled to relief. *Cf*. 626 F.3d at 549.

The government, according to one recent unpublished opinion, bears additional burdens—to show that once the facts are fully developed, it may be able to demonstrate the petitioner is not entitled to relief and to identify evidence that indicates the information supporting those "allegations" likely exists. *In re CCA Rec'g 2255 Litig. v. United States*, No. 19-CV-2491-JAR-JPO, 2020 WL 6088037, at *15 (D. Kan. Oct. 15, 2020). In implying the government cannot obtain discovery without asserting an affirmative defense, the opinion ignores the import of *Curtis* and *Bracy*. *See also United States v. Pinson,* 584 F.3d 972, 978 (10th Cir. 2009) (holding an allegation of ineffective assistance of counsel waives the attorney-client privilege to the extent necessary to prove or disprove the claim). Moreover, the opinion concerns a distinguishable case in which the government asserted affirmative defenses, and it provides no guidance here, where the thrust of discovery involves the investigation of potential rebuttal evidence.

Because Fields asserts that his current mental health informs his prior condition and, by extension, the reasonableness of trial counsel's conduct, good cause exists for the government to evaluate him at this time. Federal Rule of Civil Procedure 35(a)(1) authorizes courts to order a party whose mental condition is in controversy to submit to a mental examination by a suitably licensed or certified examiner. In this case, Fields has placed in controversy his mental health as diagnosed by psychiatrists and neuropsychologists. *E.g.* 2255 Doc. 1 at 5, 19-26.

The government previously retained a neuropsychologist, James Seward, Ph.D., to evaluate Fields. That evaluation occurred in 2013, and Dr. Seward has indicated that the opportunity to re-evaluate Fields would assist him in providing accurate and complete testimony given the passage of time since the original interview. Any such evaluation would occur in the Special Confinement Unit at the U.S. Penitentiary in Terre Haute, Indiana, where the Bureau of Prisons currently houses Fields.

Additionally, the government seeks permission to have a psychiatrist evaluate Fields. The defendant has indicated his intention to present the testimony of a psychiatrist, Dr. George Woods. Because Fields intends to rely on the findings of a psychiatrist, the government should have the opportunity to evaluate him using a like expert, in order to test the reliability of the opinions offered in support of the claim of brain damage. At this time, the government has not identified a professional to perform the examination, but intends to do so shortly, and will provide notice to the court and counsel. As with the neuropsychological testing proposed above, any psychiatric evaluation will occur at the Special Confinement Unit in Terre Haute.

Fields' counsel asked that any government expert evaluation of Mr. Fields be recorded and provided to them. The government agrees to have its mental health experts record their interviews with Fields, but it does not agree to record neuropsychological testing of him.

## II. THE COURT SHOULD PERMIT THE GOVERNMENT TO SERVE SUBPOEANAS DUCES TECUM OR REQUESTS FOR PRODUCTION FOR MEDICAL AND MENTAL HEALTH RECORDS

Fields' history of medical and mental health treatment provides insight into the veracity and reliability of his claim of brain damage. This Court should permit the government to obtain documents relating to such treatment and evaluations.

Federal Rules of Civil Procedures 34(c) and 45 permit a litigant to subpoena documents in the possession of a non-party. Good cause exists to permit the government to subpoena documents related to Fields's medical and mental health history. Such records inform the reliability of the opinions proffered by Fields' retained experts and will assist the government's experts in reaching accurate conclusions of their own. Given the significance of these documents and the likelihood that they contain evidence to rebut Fields' allegations, the Court should permit access. Specifically, it should permit the government to subpoena from the U.S. Bureau of Prisons ("BOP") records concerning any medical treatment or evaluation it has extended to Fields and any mental health treatment or evaluations it has performed on Fields. To the extent those records are privileged under state or federal law, the Court should order Fields to execute the waivers necessary for the government to obtain the material.

Fields has indicated he will independently seek discovery of his BOP medical and mental health records, underscoring the probity of those documents to the issues at hand. Counsel for the government has offered to share the records, to the extent possible under BOP policy, but has not objected to Fields' independent pursuit of court process to mandate disclosure.

Additionally, Fields obtained an MRI at the advice of his retained neuropsychologist, Dr. Martell. *See* 2255 Doc. 139 at 20. Dr. Martell asserted that an MRI would likely reflect evidence of a stroke or a tumor. In the estimation of Dr. Susan Koslow, the radiologist who first

5

interpreted the MRI, the images depicted a normal brain.  *Id*. at 20-22.  The government has obtained the report from the evaluation, but not the images themselves.  However, Fields' counsel have agreed to disclose the images to the government, forestalling any request for formal discovery of them.

To extent the MRI records are privileged under state or federal law, this Court should order Fields to execute any waivers necessary for the government to interview and potentially subpoena the testimony of the radiologists and technicians who performed the MRI and initially interpreted it, including but not limited to Dr. Koslow.  The waiver should permit the government to authenticate any records obtained through Fields or a third-party source and to investigate and potentially present Dr. Koslow's opinion.

## III.  THE COURT SHOULD PERMIT THE GOVERNMENT TO SERVE SUBPOENAS OR REQUESTS FOR PRODUCTION FOR RECORDS PRODUCED OR RELIED UPON BY FIELDS' RETAINED MENTAL HEALTH EXPERTS

As noted, Fields has relied upon the opinions of multiple medical and mental health experts in support of his claim of brain damage.  *See*, *supra*, Args. I.  To assess the reliability and veracity of those opinions, the government seeks access to the records those professional relied upon in forming their opinions.  For the same reason, the government seeks access to any records those professionals produced in aid of their opinions.  At a minimum, the government intends to rely on such records to ensure that its own retained experts stand on equal footing with those hired by Fields.  Potentially, the government could rely on the material to confront witnesses presented by Fields at the hearing.

Accordingly, good cause exists for the government to serve upon Fields a demand for production of every document he or his counsel provided to George W. Woods, M.D., Bradley D. Grinage, M.D., Michael M. Gelbort, Ph.D., Daniel A. Martell, Ph.D., Louise Bumgardener,

M.D., Larry Trombka, M.D., R.L. Winters, M.D., and Dean Anderson, PA, during the course of his interactions with them. Likewise, the Court should permit the government to serve upon Fields, as limited by Federal Rule of Civil Procedure 26(b)(4), a demand for production of every document he or his counsel may have received from George W. Woods, M.D., Bradley D. Grinage, M.D., Michael M. Gelbort, Ph.D., Daniel A. Martell, Ph.D., Louise Bumgardener, M.D., Larry Trombka, M.D., R.L. Winters, M.D., and Dean Anderson, PA. This Court should order Fields to execute any waivers or privilege or privacy necessary for the government to obtain the material.

The government recognizes that it has already assembled many of the documents comprising Fields' personal and medical history. *See* Ex. A. The government does not seek to vex Fields' counsel with redundant requests for disclosures of documents in its possession. Indeed, the government and Fields' counsel have agreed to exchange Bates stamped copies of the documents supplied to their respective experts. The government maintains its request for formal discovery of the documents only in the event that an unforeseen obstacle should arise that precludes a cooperative exchange.

To the extent not otherwise encompassed by the requests for production (records provided to or from mental health experts), this Court should permit the government to issue subpoenas for any materials possessed by George W. Woods, M.D., Bradley D. Grinage, M.D., Michael M. Gelbort, Ph.D., Daniel A. Martell, Ph.D., Louise Bumgardener, M.D., Larry Trombka, M.D., R.L. Winters, M.D., and Dean Anderson, PA concerning their professional involvement with Fields, including but not limited to any notes, interview notes, raw test data, normative data, diagnostic criteria, and other documents provided by the defendant or his attorneys that were considered in forming the experts' opinions.

If the records provided to or produced by Fields' medical and mental health experts are privileged under state or federal law, this Court should order Fields to execute any waivers necessary for the government to obtain the material.  Such a waiver should encompass any privilege or privacy interest Fields might otherwise assert with respect to the conduct of the professionals who treated or evaluated him.  It should also permit the government to authenticate any records obtained through Fields or a third party.

**CONCLUSION**

Based on the foregoing reasoning and authority, the government urges this court to grant the proposed discovery order.

Dated: December 1, 2020

Respectfully submitted,

BRIAN J. KUESTER
United States Attorney
Eastern District of Oklahoma

*/S/ Christopher J. Wilson*
CHRISTOPHER J. WILSON, OBA # 13801
First Assistant United States Attorney
520 Denison Avenue
Muskogee, OK  74401
Telephone: (918) 684-5100
FAX: (918) 684-5150

*/S/ Jeffrey B. Kahan*
JEFFREY B. KAHAN, PaBN #93199
Deputy Chief, Capital Case Unit
U.S. Dept. of Justice
1331 F Street, NW; Rm. 345
Washington, DC 20530
Telephone: (202) 305-8910
FAX: (202) 353-9779

## CERTIFICATE OF ECF FILING AND DELIVERY

I hereby certify that on December 1, 2020, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. A Notice of Electronic Filing will be sent via the Court's CM-ECF system to the following counsel of record:

- James L. Hankins jameshankins@ocdw.com, jhankins5@cox.net
- Barry L. Derryberry barry_derryberry@fd.org, okn_ecf@fd.org
- Julia L. O'Connell julia_o'connell@fd.org, okn_ecf@fd.org
- Cristi Charpentier cristi_charpentier@fd.org, Magda_Watson@fd.org, Susan_Hart@fd.org
- Katherine Ensler Katherine_ensler@fd.org
- Hunter Labovitz Hunter_labovitz@fd.org

Additionally, I placed an exact copy of this document in U.S. Mail to Vicki Mandell-King; Federal Public Defender - Denver; 633 17th Street, Ste. 1000; Denver, Colorado 80202

*S/ Jeffrey B. Kahan*
JEFFREY B. KAHAN