UNITED STATES OF AMERICA,

       ***Respondent,***

v.

EDWARD LEON FIELDS, JR.,

       ***Petitioner***.

**Case No. 6:03-cr-00073-RAW**

---

**PETITIONER'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* (DOC. 389)**

    Petitioner, Edward Leon Fields, Jr. through undersigned counsel, respectfully responds to the Government's Motion *in Limine* (Doc. 389) as follows:[1]

**I.**     **The Tenth Circuit's Mandate, and Judge White's July 20, 2020 Order Referring the Case to This Court, Are Both Clear on The Scope of the Evidentiary Hearing on Claim One: Whether Trial Counsel Was Constitutionally Ineffective "For Failing to Investigate and Present Evidence of Fields's Organic Brain Damage."**

    Mr. Fields agrees with the Government that a district court must "comply strictly" with the Tenth Circuit's mandate on the scope of the evidentiary hearing. Doc. 389 at 2. But the Government errs in interpreting that mandate. Strict compliance with the mandate requires a hearing on counsel's failure to present evidence of Mr. Fields's brain damage generally and not just on counsel's failure to call Dr. Michael Gelbort at trial specifically, as the Government asserts. And that is exactly what Judge White ordered on July 20, 2020. Doc. 317.

    In his § 2255 Amended Petition, Mr. Fields raised a claim that "trial counsel were ineffective for failing to investigate and present evidence of Mr. Fields' organic brain damage."

---

[1] Mr. Fields withdraws Steven Nolder as a witness in his case-in-chief, and therefore does not respond to the Government's motion regarding Mr. Nolder.

*United States v. Fields*, Case No. 10-cv-115 (E.D. Okla.), Doc. 106 at 23–31 ("2255 Doc. 106"). Mr. Fields's proffer supporting that claim included declarations from trial counsel, Dr. Gelbort, Dr. George Woods, and Dr. Bradley Grinage. *Id.* at 27–29. The claim was framed broadly as trial counsel's ineffectiveness in not presenting evidence of Mr. Fields's brain damage and for failing to challenge the testimony of prosecution trial expert Dr. J. Randall Price suggesting that Mr. Fields did *not* have brain damage. The claim was in no way limited to counsel's ineffectiveness for not presenting a particular witness.

The case management order from the Tenth Circuit governing the appeal of this issue was similarly broad: "The issues to be raised in the opening brief are: . . . [W]hether Mr. Fields's trial counsel ineffectively developed, presented, and litigated mitigating mental health evidence, by failing to investigate and present evidence of his organic brain damage." Tenth Circuit Case Management Order, No. 17-7031, *United States v. Fields* (March 9, 2018) (Murphy, J.).

On appeal, both parties framed the first issue in the same broad terms used in the case management order. *See* Appellant's Opening Br. at 7, *United States v. Fields*, No. 17-7031 (10th Cir.) ("[T]rial counsel ineffectively failed to present available evidence of Mr. Fields's brain damage."); Appellee's Br. at 17, *United States v. Fields*, No. 17-7031 (10th Cir.) ("Fields claims he is entitled to collateral relief because trial counsel provided ineffective assistance by failing to present evidence of his alleged brain damage."). Correspondingly, the Tenth Circuit correctly captioned Issue One as "ineffective assistance of trial counsel for failing to adequately investigate and present evidence of Fields's organic brain damage." *United States v. Fields*, 949 F.3d 1240, 1247 (10th Cir. 2019). And, in addressing that claim, the Tenth Circuit held:

> In his first issue on appeal, Fields argues that the district court abused its discretion by failing to conduct an evidentiary hearing on his *claim that his trial counsel was ineffective for failing to investigate and present evidence of Fields's organic brain damage*. . . . As we shall proceed to explain, we ultimately conclude that the district

court abused its discretion by failing to conduct an evidentiary hearing on both of these components, and *therefore remand the case to the district court to conduct an evidentiary hearing on Fields's claim.*

*Id.* (emphasis added).

The Circuit later repeated this same remand language:

[W]e are reversing the district court's denial of *Fields's claim that his trial counsel was ineffective for failing to adequately investigate and present evidence of his organic brain damage*, and *remanding that claim* to the district court for an evidentiary hearing. . . . In addition, if the district court denies *the remanded ineffective assistance claim* (*failure to investigate and present evidence of organic brain damage*) on the prejudice prong of the *Strickland* test, it will have to include *that claim* in its cumulative error analysis as well.

*Id.* at 1273 (emphasis added). And it opened its opinion with similar broad language. *Id.* at 1243 ("[R]emand[ing] to the district court with directions to conduct an evidentiary hearing on Fields's claim that his trial *counsel was ineffective for failing to adequately investigate and present at trial evidence of his organic brain damage.*") (emphasis added).

Ultimately, the Tenth Circuit remanded the case to the district court with the following instructions: "[T]he case is REMANDED to the district court for further proceedings consistent with this opinion." *Id.* at 1273. The judgment of the Tenth Circuit is to the same effect. *See* Judgment, *United States v. Fields*, No. 17-7031, Doc. 010110281154 (10th Cir. December 30, 2019) ("The case is remanded to the United States District Court for the Eastern District of Oklahoma for further proceedings in accordance with the opinion of this court.").

Despite the broad language used by both of the parties and the Tenth Circuit in defining the issue that was ultimately remanded for a hearing, the Government now—more than four years after the mandate issued[2]—seeks to narrow the scope of the hearing by cherry picking a single line from the Tenth Circuit's remand opinion. *See* Doc. 389 at 4 ("When it ordered the upcoming

---

[2] The Tenth Circuit's mandate became final on February 21, 2020. *See* Mandate, *United States v. Fields*, No. 17-7031, Doc. 010110307054 (10th Cir. Feb. 21, 2020).

evidentiary hearing, the Tenth Circuit stated 'we must remand the case to the district court to conduct an evidentiary hearing on Fields's claim that his trial counsel was ineffective for failing to adequately investigate and present at trial the testimony of Gelbort.'" (quoting *Fields*, 949 F.3d at 1259)). But "[t]he mandate consists of [the Tenth Circuit's] instructions to the district court at the conclusion of the opinion, and *the entire* opinion that preceded those instructions." *Proctor & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003) (emphasis added). And "[t]he district court may consider the opinion to determine the intent of the mandate." *United States v. Shipp II*, 644 F.3d 1126, 1129 (10th Cir. 2011). In the second paragraph of the opinion, as well as in the discussion of both Issue One and Issue Four, the Tenth Circuit ordered a hearing "on Fields's claim that his trial counsel was ineffective for failing to adequately investigate and present at trial evidence of his organic brain damage." *Fields*, 949 F.3d at 1243, 1247, 1273.

The Government ignores these clear expressions of the scope of the mandate, which the Tenth Circuit repeated throughout "the entire opinion." Such focus on outlier, isolated language in the "conclusion" section of Issue One summarizing the ruling is not only misplaced but runs afoul of Tenth Circuit precedent holding that there is a "presumption in favor of a general remand." *United States v. West*, 646 F.3d 745, 749 (10th Cir. 2011). Here, because the Tenth Circuit did not specifically limit the scope of the remand in the manner now proposed by the Government, the articulated appellate remand is an open-ended, general remand. *Cf. Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1102 (10th Cir 2015) (holding that remand language of "further proceedings not inconsistent with this opinion" "didn't specifically prevent anything" on remand).

Accounting for the opinion read as a whole, the multiple times the remand scope on Issue One was expressed broadly, the Tenth Circuit's judgment consistent with its mandate language, and the presumption of a general remand, the intent of the mandate is clear: the Tenth Circuit did

not narrow the scope of the hearing beyond whether trial counsel was ineffective for failing to adequately investigate and present evidence of his organic brain damage.[3] Under Tenth Circuit caselaw, if the *Fields* panel had intended to limit the hearing on Issue One to just the trial testimony of Dr. Gelbort, "it would have spoken with greater specificity." *United States v. Walker*, 918 F.3d 1134, 1147–48 (10th Cir. 2019).

The Government's understanding of the scope of this hearing also runs afoul of Tenth Circuit jurisprudence holding that, "'when the remand is general, . . . the district court is free to decide anything not foreclosed by the mandate.'" *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 971 (10th Cir. 1991) (quoting 1B S. Moore, J. Lucas, & T. Currier, *Moore's Federal Practice* ¶ 0.404[10] (1988)). *Accord West*, 646 F.3d at 749 ("[U]nless the district court's discretion is specifically cabined, it may exercise discretion on what may be heard."); *Haugen*, 317 F.3d at 1126 (holding the mandate "controls all matters within its scope," but leaves the district court on remand "free to pass upon any issue which was not expressly or impliedly disposed of on appeal").

Here, Judge White ordered that:

> an evidentiary hearing is required as to defendant's claim that his *trial counsel was ineffective for failing to adequately investigate and present evidence of his organic brain damage*. In light of this, this case is hereby referred to Magistrate Judge Kimberly E. West for purposes of an evidentiary hearing and Report and Recommendation pursuant to Title 28, United States Code, Section 636(b)(1) as to Edward Leon Fields, Jr.

Order, *United States v. Fields*, No. 03-cr-73, Doc. 317 (E.D. Okla. July 20, 2020) (emphasis added). Judge White's Order conforms on all fours with the broadly articulated appellate remand.

---

[3] The Government could have filed a motion for rehearing or clarification of the mandate before the mandate became final on February 21, 2020, but did not. *See* Fed. R. App. P. 40(a)(2); 10th Cir. R. 40.1; *see also Abel v. West*, 932 F.2d 898, 898–99 (10th Cir.1991) (modifying dispositional language of a prior opinion on "petition for writ of mandamus or an alternative for clarification of mandate"). Or, after the mandate became final, the Government could have filed a motion to amend the mandate but did not. *See* 10th Cir. R. 41.2 (providing for motion to recall mandate).

In any event, Judge White's Order was a valid exercise of the discretion vested in district courts under the Tenth Circuit mandate rule. *United States v. Hicks*, 146 F.3d 1198, 1200 (10th Cir 1998).

In short, a hearing on Claim One cabined to what Dr. Gelbort could have testified to at trial—as the Government repeatedly urges, *see* Doc. 389 at 2, 4, 11—would violate both the Tenth Circuit's remand Order and Judge White's July 2020 Order because the Tenth Circuit did not specifically limit or constrain the district court's discretion in determining the scope of the evidentiary hearing in the manner now proposed by the Government. *See, e.g.*, *West*, 646 F.3d at 748-49; *cf. Walker*, 918 F.3d at 1145–47 ("comparing and contrasting" remand language in an earlier opinion to the remand language in prior Tenth Circuit decisions where the Court "determined either that the language did *not* impose restrictions on the district court's sentencing discretion or that the language *did* in fact cabin the court's discretion") (emphasis in original).

The Government acknowledges Judge White's Order but does not give it the deference it is due. After erroneously arguing that "[t]he mandate . . . limited the evidentiary hearing to trial counsel's handling of Dr. Gelbort's testimony," the Government argues in the very next sentence that, "[i]ndeed, this Court recognized the scope of the remand in its minute order of July 20, 2020." Doc. 389 at 4. The Government then quotes the substance of Judge White's Order, but never explains how the order for "an evidentiary hearing . . . as to defendant's claim that his trial counsel was ineffective for failing to adequately investigate and present evidence of his organic brain damage," squares with the Government's view that the "evidentiary hearing [is limited] to trial counsel's handling of Dr. Gelbort's testimony." *Id.* Squaring the two is not possible, as the Government's view is unduly restrictive.

Under the mandate rule and the Tenth Circuit case law detailed above, it is Judge White's July 20, 2020 Order that now controls the scope of the evidentiary hearing. And, respectfully, this

Court's role under the Federal Magistrate Act is to conduct the hearing under the specific terms Judge White ordered. *See* 28 U.S.C. § 636(b)(1)(B).

**II.     To Fulfill the Tenth Circuit's Remand, Mr. Fields Must Be Allowed to Present Evidence in Support of His Social History Claim.**

The Government urges this Court to preclude Captain Art Cody, Captain Raymond Mach, Officer Joseph Stanik, and Cherie Fields from testifying at the upcoming hearing. According to the Government their testimony is only relevant to the social history claim, which the Government believes to be "outside the scope of the evidentiary hearing ordered by the Tenth Circuit." Doc. 389 at 4–5. Similarly, the Government argues that Gloria Shettles should be precluded from offering any testimony with respect to the social history claim and that her testimony must be confined to the brain damage claim. *Id.* at 5 n.2. But the Government misreads the scope of the Tenth Circuit's mandate and, regarding Captain Cody, Captain Mach, and Officer Stanik, fails to appreciate that their testimony is also relevant to Mr. Fields's brain damage claim. *See* § III, *infra.*

According to the Government, "[t]his Court and the Tenth Circuit unequivocally closed the door previously on an evidentiary hearing as to the Petitioner's social history" and "fully resolved the Petitioner's timely ineffectiveness claim regarding social history evidence." *Id*. at 5. However, contrary to the Government's characterization, the only issue that the Tenth Circuit "fully resolved" with respect to the social history claim was whether the district court properly decided that Mr. Fields had not demonstrated sufficient prejudice under *Strickland* to merit relief. *See Fields*, 949 F.3d at 1268 ("[A]n evidentiary hearing was unnecessary for the district court, or in turn for us, to conclusively resolve the issue of prejudice [under *Strickland*].").

Given its finding that this Court had properly resolved the question of *Strickland* prejudice without holding a hearing, the Tenth Circuit explicitly stated that it "need not reach a final conclusion regarding the performance prong of the *Strickland* test." *Id.* at 1267. After reviewing

the evidence before this Court regarding counsel's performance, the Tenth Circuit concluded that "[t]here are, of course, disputes of fact regarding whether or not [trial counsel Julia] O'Connell made a strategic decision to forego presenting the social history evidence." *Id.* at 1268. A hearing is necessary to resolve the factual disputes that the Tenth Circuit identified in the record. *See Moore v. United States*, 950 F.2d 656, 661 (10th Cir. 1991) (hearing necessary when "factual disputes and inconsistencies beyond the record exist"); *Machibroda v. United States*, 368 U.S. 487, 495 (1962) (a record containing controverted facts by definition does not conclusively resolve a claim and such factual disputes merit a hearing); 28 U.S.C. § 2255(b) (district court "shall" hold an evidentiary hearing on the prisoner's claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

Furthermore, even if the Government's characterization of the mandate is correct, this Court nonetheless has discretion to hear evidence regarding counsel's performance. Although the mandate rule "'generally requires [district] court conformity with the articulated appellate remand,'" the Tenth Circuit has recognized that it is "'a discretion-guiding rule subject to exception in the interests of justice.'" *United States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996) (quoting *United States v. Moore*, 83 F.3d 1231, 1234 (10th Cir. 1996)). Regardless of the precise contours of the Tenth Circuit's remand, the interests of justice require a hearing to resolve the disputed issues of fact that the Tenth Circuit identified regarding trial counsel's performance in this capital case. *See Burger v. Kemp*, 483 U.S. 776, 785 (1987) ("[A court's] duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case.").

Additionally, if, as the Government suggests, the Tenth Circuit had found that trial counsel made a strategic decision to forego the social history evidence, there would be no constitutional violation and, therefore, nothing to cumulate. *See United States v. Rivera*, 900 F.2d 1462, 1471

(10th Cir. 1990) (en banc) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."); *Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir. 1997) (cumulative error analysis only applies "where there are two or more actual errors"). The Tenth Circuit clearly did not make a finding that this claim failed on the deficient performance prong because the Tenth Circuit explicitly directed this Court to consider the social history claim when reviewing the evidence developed at the evidentiary hearing for cumulative error. *See Fields*, 949 F.3d at 1273 ("In conducting that cumulative error analysis, the district court will have to include the two ineffective assistance of counsel claims that we resolved in this appeal on the prejudice prong of the *Strickland* test (i.e., counsel's failure to present the social history evidence and counsel's failure to object to the prosecutor's allegedly improper closing argument) and the claim directly challenging the allegedly improper remark made by the prosecutor during closing argument, since we resolved that claim on the basis of harmlessness.").

For these reasons, the Government is wrong that all evidence related to Mr. Fields's social history claim is outside the scope of the hearing. The Tenth Circuit held that a hearing was not required to determine whether Mr. Fields had suffered the requisite prejudice to prevail on the standalone ineffective-assistance-of-counsel claim. Consistent with the Tenth Circuit's ruling, Mr. Fields does not intend to call witnesses to demonstrate that he can satisfy *Strickland* prejudice for the standalone social history claim. However, the Tenth Circuit's decision regarding *Strickland* prejudice does not limit this Court's consideration when conducting a cumulative error analysis. As such, consistent with the Tenth Circuit's remand, Mr. Fields is entitled to present evidence to demonstrate the quantum and nature of prejudice that this Court was ordered to cumulate.

III.     **Captain Cody, Captain Mach, and Officer Stanik Will Also Offer Testimony Relevant to Mr. Fields's Brain Damage Claim.**

Additionally, with respect to Captain Cody, Captain Mach, and Officer Stanik, the

Government inaccurately argues that their testimony is irrelevant to Mr. Fields's brain damage claim. The Tenth Circuit has held that, when assessing whether a defendant was prejudiced by the omission of brain damage evidence, the consideration must include whether the brain damage is "treatable" as well as whether the omitted evidence would have been "double-edged." *See*, *e.g.*, *Littlejohn v. Royal*, 875 F.3d 548, 559-60, 565 (10th Cir. 2017).

As their declarations detail, these witnesses could have offered compelling trial testimony that Mr. Fields adjusted exceedingly well to the highly structured environment of the Navy. *See* Ex. A, Decl. of Raymond Mach, June 15, 2022, ¶ 2 (Mr. Fields was "a good sailor who did well with the discipline and structure of the Navy and the USS Fairfax County."); Ex. B, Decl. of Joseph Stanik, June 15, 2022, ¶ 10 (Mr. Fields "exhibited professionalism as a sailor, understood and followed the Navy's rules and regulations and thrived within a structured environment."); Ex. C, Report of Art Cody, Apr. 19, 2022, at 15 ("Through his service in the US Navy[, Mr. Fields] has shown that he is able to conform his behavior to extremely structured conditions.").

Trial counsel then could have used this testimony about Mr. Fields's rule-abiding and regulated conduct in the structured setting of the Navy to argue to the jury that, despite his brain damage, the violence and judgment problems Mr. Fields exhibited in the community would not likely recur in a structured prison setting. As such, testimony from these three Navy-related witnesses is relevant to meet the Tenth Circuit's brain damage qualifications. Therefore, Mr. Fields must be allowed to present evidence from these witnesses.

IV. **Maureen Baird's Testimony Regarding Mr. Fields's Prison Adjustment Is Relevant to Satisfying the Tenth Circuit's Qualifications on "Treatability" and "Double Edged."**

The Government contends that the testimony of Maureen Baird, a former Bureau of Prisons warden and highly experienced corrections expert, is irrelevant because the "[p]etition does not allege that trial counsel was ineffective for not calling an expert on future dangerousness." Doc.

389 at 6. The Government is correct that the petition does not contain such a claim. However, Ms. Baird is not being offered to support such a claim. Rather, her testimony will be offered to show that trial counsel could have used Mr. Fields's prison adjustment to convince the jury that his brain damage was "treatable" and not "double edged," as the Tenth Circuit requires.

Consistent with the proffered testimony of Captain Cody, Captain Mach, and Officer Stanik concerning Mr. Fields's conduct in the Navy, Ms. Baird would testify that Mr. Fields functions exceedingly well in the structured environment of prison. *See* Ex. D, Report of Maureen Baird, Apr. 12, 2022, ¶ 41 (Mr. Fields has a "very positive adjustment to prison life," "an exemplary conduct record," and "a positive rapport with institution staff."); Ex. E, Suppl. Report of Maureen Baird, Aug. 9, 2023, ¶ 26 ("I do not believe Mr. Fields would pose any concerns for the BOP regardless of the prison where he is incarcerated."). Like above, this testimony from Ms. Baird supports *Strickland* prejudice considering the Tenth Circuit's qualifications on brain damage evidence.

The Government also errs in portraying Ms. Baird's evidence as "nothing more than post-hoc mitigation," Doc. 389 at 6, because Ms. Baird also reviewed Mr. Fields's pretrial detention records and opines that, based on her professional expertise, Mr. Fields also adapted exceedingly well in pretrial detention. Ex. D, ¶¶ 13-15. Prior to trial, counsel obtained Mr. Fields's pretrial detention records from the Muskogee County Detention Center and Muskogee Sheriff Office and, therefore, could have offered testimony regarding Mr. Fields's conduct during pretrial detention from an expert such as Ms. Baird. At a minimum, testimony from Ms. Baird at the evidentiary hearing about what she could have testified to at trial based on her expertise as well as her review of Mr. Fields's pre-trial incarceration records and her interviews of Mr. Fields is relevant and admissible given the scope of Judge White's hearing Order and the Tenth Circuit's brain damage

11

evidence qualifications. Therefore, Mr. Fields must be allowed to present Ms. Baird's testimony.

Also, despite arguing that Mr. Fields's "behavior while incarcerated" is irrelevant to the hearing, the Government asked its own expert, Dr. James Seward, to inspect Mr. Fields's post-trial behavior in prison. Dr. Seward apparently scrutinized Mr. Fields's commissary purchases, video recordings of the room in prison where Mr. Fields watches television, audio recordings of Mr. Fields's phone calls, and Mr. Fields's email correspondence with pen pals. *See* Doc. 388 at 4, Report of Dr. James Seward, May 24, 2024, Gov. Ex. 38. Dr. Seward devoted a significant portion of his report to discussing Mr. Fields's behavior in BOP custody and then concluded that Mr. Fields's conduct in prison supports his conclusion that Mr. Fields does not have brain damage. Ms. Baird's testimony is, therefore, also admissible as rebuttal because it provides a basis for reaching a contrary conclusion by corroborating that Mr. Fields's positive response to confinement is consistent with his brain impairments.

## V. Mr. Fields Is Not Calling Richard Burr or Gloria Shettles as a *Strickland* Expert.

Regarding Mr. Burr, in the December 15, 2016 opinion denying relief on Mr. Fields's first claim, Judge White cited to emails between trial counsel and "attorneys from the National Capital Resource Counsel regarding the facts of this particular case and ideas on how best to defend it" to support the implication that "more counsel were available to assist on this case than those who actually made a formal appearance in the case." 2255 Doc. 125 at 11. Mr. Burr was one such attorney and thus will testify, "[i]n response to this portion of Judge White's opinion, . . . to any contact he had with Mr. Fields's trial counsel and any assistance he provided to Mr. Fields's legal team." Doc. 386 at 2–3. The Government acknowledges as much in its motion and does not object to such testimony, *id.* at 7 n.3, but goes on to argue that "the Court should restrict that testimony only to [attorney-witnesses'] factual knowledge of the defendant's representation and bar opinions

12

as to the reasonableness of trial counsel's acts and omissions." *Id.* The Petitioner has no objection to that request as he is not calling Mr. Burr for an expert legal opinion on whether trial counsel's performance was reasonable under *Strickland*, but rather as a fact witness.

Regarding Ms. Shettles, who was the trial mitigation specialist, she too is a fact witness regarding trial counsel's deficient performance. *See* 2255 Doc. 106-5.

**VI.     Mr. Fields Is Not Limited to Challenging Dr. Price's Testimony Through Dr. Gelbort.**

Finally, the Government seeks to exclude evidence from neuropsychologists Clark Clipson and Alan Kaufman, from whom Mr. Fields has proffered affidavits critiquing the methods and findings of prosecution trial expert Dr. Price. According to the Government, the evidence of Drs. Clipson and Kaufman is irrelevant because this Court is limited to determining what Dr. Gelbort— and *only* Dr. Gelbort—would have said in response to Dr. Price's trial testimony. But this position relies on a misreading of prior pleadings, the scope of this hearing, and the relevant law.

To begin, the Government mischaracterizes the claim relating to Dr. Price as set forth in Mr. Fields's § 2255 Amended Petition. There, Mr. Fields argued that trial counsel was ineffective "for failing to rebut testimony presented by the Government claiming that Mr. Fields did not have any significant neuropsychological impairments." 2255 Doc. 106 at 26–27. In support, Mr. Fields argued not only that trial counsel could have and should have presented Dr. Gelbort to refute Dr. Price's testimony, but that the testimony "could have been rebutted by *any competent neuropsychologist*." *Id.* at 29 (emphasis added). Indeed, the Government acknowledged as much in its Motion for Summary Judgment, stating: "Fields has presented evidence that suggests Gelbort, *and other mental health experts*, could have offered assistance in rebutting the findings of a government expert, Dr. Price." 2255 Doc. 110 at 17 (emphasis added).

Next, the Government complains that although the affidavits of Drs. Clipson and Kaufman

were submitted with Mr. Fields's § 2255 Amended Petition, he did not reference the experts by name in pleadings until filing his Answer in Opposition to Motion for Judgment. But the Tenth Circuit has repeatedly held that a party is not precluded from raising new facts in a responsive brief so long as the opposing party has an opportunity to respond. *See, e.g.*, *Clancy v. Miller*, 837 F. App'x 630, 634 (10th Cir. 2020); *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). Here, the Government was provided such an opportunity in its Reply in Support of Motion for Judgment in Favor of the Government. *See* 2255 Doc. 122. In that brief, which was the final substantive pleading prior to this Court's 2016 decision denying relief to Mr. Fields, the Government acknowledged the evidence from Drs. Clipson and Kaufman and made no attempt to describe the evidence as falling beyond the scope of Mr. Fields's "timely" claim.[4]

Mr. Fields again expressly relied on the evidence of Drs. Clipson and Kaufman in his pleadings before the Tenth Circuit, *see* Mot. for Certificate of Appealability at 33–39, *United States v. Fields*; No. 17-7031; Appellant's Opening Br. at 29–30, *United States v. Fields*, No. 17-7031, again without objection from the Government. Despite this, the Government now argues that the Tenth Circuit "interpreted" Mr. Fields's claim regarding Dr. Price as alleging that the "Petitioner suffered prejudice because counsel did not call Dr. Gelbort, not [because counsel failed] to call some other expert." Doc. 389 at 11 (citing *Fields*, 949 F.3d at 1259). In fact, as discussed at length above, the Tenth Circuit granted a hearing on "both" the deficient performance prong and the prejudice prong of the "first issue" raised on appeal. *Fields*, 949 F.3d at 1247. That issue, as presented in Mr. Fields's opening brief, alleged that trial counsel ineffectively failed to investigate and present evidence of brain damage and, "to the extent that the prosecution's

---

[4] Notably, the Government referenced eight new exhibits in its own reply brief, to which Mr. Fields had no opportunity to respond, four of which now are among the Government's hearing exhibits. *See* 2255 Doc. 122-1, 122-2, 122-4, 122-7.

response would have been" to present an opinion from Dr. Price "that Mr. Fields is not brain damaged," counsel was ineffective for failing to "undercut that opinion" with the evidence contained in the affidavits of Drs. Clipson and Kaufman, as well as Dr. Gelbort. Appellant's Opening Br. at 29, *United States v. Fields*, No. 17-7031. Nothing in the Government's response brief suggested that the allegations related to Dr. Price should be limited in the way it now suggests and, more importantly, nothing in the Tenth Circuit's opinion suggests that the hearing on the first issue was to be confined to some subset of the allegations presented by Mr. Fields.

Turning to the law, the Government fails to cite a single case to support the proposition that a § 2255 petitioner may only show prejudice by establishing that trial counsel's chosen expert could have offered testimony useful to his defense. Meanwhile, the cases that the Government does cite in support of its attempt to exclude Drs. Clipson and Kaufman are wholly inapposite, as the petitioner in each failed to proffer what *any* expert or other witness could have testified to that would have a reasonable likelihood of a different outcome. *See* Doc. 389 at 11–12 (citing *Young v. Att'y Gen. for New Mexico*, 534 F. App'x 707 (10th Cir. 2013); *Matylinsky v. Budge*, 577 F.3d 1083 (9th Cir. 2009); and *Grisby v. Blodgett*, 130 F.3d 365 (9th Cir. 1997)). None of these cases involved a petitioner who, like Mr. Fields, proffered detailed evidence from identified experts who could have been called at trial but, due to counsel's ineffectiveness, were not.

**CONCLUSION**

Based on the above argument and authority, the Government's Motion *in Limine* should be denied in its entirety.

Respectfully submitted,

/s/ Hayden Nelson-Major
Hayden Nelson-Major
Katherine Ensler
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone: (215) 928-0520
katherine_ensler@fd.org
hayden_nelson-major@fd.org

Hunter Labovitz
Federal Public Defender for the Western
District of Oklahoma
215 Dean A McGee Ave, Suite 201
Oklahoma City, OK 73102
Telephone: (405) 609-5930
hunter_labovitz@fd.org

Dated: August 26, 2024                    *Counsel for Petitioner Edward Leon Fields, Jr.*

## CERTIFICATE OF SERVICE

I certify that on August 26, 2024, that the foregoing document was e-filed and that it is available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Hayden Nelson-Major
Hayden Nelson-Major
Assistant Federal Defender