**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| EDWARD LEON FIELDS, JR., | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | Criminal Case No. CR-03-73-RAW |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| *Respondent.* | ) | |

**GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE IRRELEVANT AND HEARSAY EVIDENCE**

**COMES NOW**, Respondent, the United States of America, by undersigned counsel, and submits this reply in support of its motion to exclude certain evidence and testimony from the evidentiary hearing set for October 7, 2024. Because the defendant makes no persuasive argument as to the relevance of evidence and testimony in question, the Court should grant the motion in full.

**ARGUMENT**

**I.     The Defendant Misunderstands the Mandate Rule**

Petitioner claims that the Tenth Circuit remand is broad in scope and encompasses more than just counsel's failure to call Dr. Gelbort to testify. In support of that position, he cites the Tenth Circuit's opinion, which required an evidentiary hearing to determine whether "trial counsel was ineffective for failing to adequately investigate and present at trial evidence of his organic brain damage." Doc. 390 at 1-3. In relying on that language to the exclusion of the court's other directions, Petitioner has identified a distinction without a difference and thereby misconceived the ambit of the appellate order.

1

As the government noted in its motion (Doc. 389), under the mandate rule "'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'" *United States v. Walker*, 918 F.3d 1134, 1143 (10th Cir. 2019). District courts must therefore "'comply strictly' with the reviewing court's mandate." *United States v. Channon*, 973 F.3d 1105, 1110 (10th Cir. 2020). The question before the appellate court informs the scope of its mandate. *See United States v. Chavero*, no. 13-cv-0791-CVE-TLW, 2016 WL 1417824, *4 (N.D. Okla. Apr. 8, 2016) (holding "the purpose of remanding the case was to develop the record as to defendant's credibility as to one issue raised in his reply."); *see also, e.g., United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004) (holding the mandate rule "bars litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court"). If the opinion identifies a specific error to be corrected, to the exclusion of others, the district court may address only the identified error.[1] *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996). Where no specific issue is identified, the scope of the mandate is determined by reading the opinion as a whole. *See Moore v. Anderson*, 222 F.3d 280, 283 (7th Cir. 2000).

In this case, the Tenth Circuit twice unambiguously described the scope of the remand—"to conduct an evidentiary hearing on Fields's claim that his trial counsel was ineffective for failing to adequately investigate and present at trial the testimony of Gelbort." *United States v. Fields*, 949 F.3d 1240, 1259 (10th Cir. 2019). But even if the court had failed to provide such a pellucid explanation of its remand, the opinion as a whole would demand the same conclusion, despite a somewhat vaguer prefatory comment that "we . . . remand . . . with directions to conduct an

---

[1] Petitioner argues the Tenth Circuit issued a "general remand," but those typically arise in cases involving resentencing. § 52:9. Scope of remand for resentencing, 12A Cyc. of Federal Proc. § 52:9 (3d ed.) This is, of course, not a resentencing, it is a § 2255 action, subject to considerable procedural restrictions including a one-year period of limitation. § 2255(f). Moreover, it is a case in which the Tenth Circuit specifically detailed the issue at hand.

evidentiary hearing on Fields's claim that his trial counsel was ineffective for failing to adequately investigate and present at trial evidence of his organic brain damage." *Id*. at 1243.

Petitioner's attempt to expand the mandate on the strength of the more general statement elevates form over substance, as the mandate cannot embrace issues he waived by failing to raise during his first round of district court litigation. *See Lee* 358 F.3d at 321. Petitioner has long argued that trial counsel was ineffective for failing to adequately investigate and present evidence of his organic brain damage based on trial counsel's failure to follow-up with and present Gelbort at trial. Specifically, his § 2255 motion asserted that trial counsel was ineffective based on the following acts or omissions: ignoring Gelbort's recommendation for further testing (2255 Doc. 106 at 16-17, 24, 27); failing to give Gelbort legible birth records (*id*. at 17); failing to present Gelbort at trial to discuss the Petitioner's brain impairments (*id*. at 24, 26-30); failing to rebut Dr. Price with Gelbort's help (*id.* at 26, 29); and failing to use the brain dysfunction evidence to bolster the testimony of Drs. Woods and Grinage (*id.* at 27-28). On appeal, Petitioner focused his claim primarily on the failure to present Gelbort and the failure to present evidence of brain dysfunction through Gelbort, Woods, and Grinage. Appellant's Opening Brief at 10-16. Thus, the only ineffective assistance claim that could have animated the Tenth Circuit's mandate involved trial counsel's acts and omissions as they relate primarily to Gelbort.

Petitioner vainly urges the Court to examine the "entire opinion" to determine the scope of the mandate. This argument offers no refuge, because the Tenth Circuit's treatment of the relevant claim focused on Gelbort. It described Petitioner's claim as follows: "trial counsel failed to discover the full extent of his brain damage because they arranged for [him] to receive only limited neuropsychological testing and then, after that testing indicated frontal lobe dysfunction, they ignored [Gelbort's] recommendation to conduct further testing," and that presentation of organic

brain damage created a "reasonable likelihood that the jury's verdict would have been different." *Fields*, 949 F.3d at 1247-48 (quoting 2255 Doc. 106). The ensuing analysis detailed trial counsel's interactions with Gelbort before trial, counsel's failure to call Gelbort to the stand, the evidence presented at trial, critiques of a government expert, and post-conviction findings of Petitioner's alleged brain dysfunction. *Id.* at 1249-53. The court concluded the record "creates a genuine issue of material fact regarding whether [trial counsel] made a strategic decision *to forego the use of Gelbort's testimony or otherwise rely on evidence of Field's possible brain damage.*"[2] *Id*. at 1253 (emphasis added).

The circuit court went on to discuss possible prejudice stemming from "trial counsel's failure to fully investigate and present testimony from *Gelbort*." *Id.* at 1254 (emphasis added). With respect to a post-conviction imaging study that did not inform trial counsel's actions but suggested a lack of prejudice, the court concluded that issues of material fact existed "whether an individual . . . can have organic brain damage that is revealed by neuropsychological testing, but that does not otherwise appear on an MRI of the brain." *Id*. at 1254-56. To resolve the prejudice prong the court identified the need to determine "whether . . . [Petitioner] was prejudiced by [trial counsel's] failure to present *Gelbort's* testimony." *Id*. at 1256 (emphasis added). The court explained that Petitioner urged it to find prejudice because his attorneys failed to present "expert testimony from *Gelbort*, and in turn ask[] Woods and Grinage to testify "about the connection between . . . [Petitioner's] brain damage and his criminal behavior.'" *Id*. at 1259 (citing appellant's brief) (emphasis added). Finally, the Tenth Circuit concluded that it could not "say that 'the files and records of the case conclusively show that' [Petitioner] was not prejudiced by his trial

---

[2] Gelbort provided the sole source of contemporaneous evidence of brain damage. 2255 Doc. 106 at 16-24. Accordingly, counsel could not have failed to act on the basis of some other witness's findings.

counsel's failure to present *Gelbort* as a witness at trial." *Id*. at 1259 (emphasis added). After that entire discussion of the organic brain damage issue, the Tenth Circuit concluded that it must "remand the case to the district court to conduct an evidentiary hearing on [Petitioner's] claim that his trial counsel was ineffective for failing to adequately investigate and present at trial the testimony of Gelbort." *Id*.

The Tenth Circuit's opinion, and its explicit mandate, focused wholly on trial counsel's alleged failures with respect to Gelbort. Any argument to the contrary should fail.

## II.     The Social History Claim Is Resolved

Petitioner also argues the Court can hear evidence regarding trial counsel's failure to present social history evidence, though it resolved that claim on prejudice grounds and the Tenth Circuit affirmed. Doc. 390 at 7. Petitioner provides no legal justification for reviving this moribund issue, nor could he, but merely makes reference to the need of hearings when facts are in dispute.

The fact this Court rejected Petitioner's claim without addressing both *conjunctive* prongs of Strickland test for ineffectiveness does not leave any factual issue in dispute. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984) ("there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is easier to resolve."). The Tenth Circuit agreed with this Court that there was no reasonable possibility that Petitioner's sentencing trial would have ended differently had the omitted evidence been presented. *Fields*, 949 F.3d at 1268. Those decisions moot any dispute over the adequacy of counsel's actions, and this Court now lacks any authority to resurrect that

5

wholly academic question.  *See Lee*, 358 F.3d at 321.

Nonetheless, Petitioner espouses "interests of justice" as a rationale for exploring irrelevant evidence.  In essence, he invites the court to reject all bounds of procedure, finality, and efficiency because this is a capital case.  His cited authority fails to support that novel approach, and no case permits a capital defendant–by virtue of his death sentence–to abuse the writ by relitigating issues.  *See* 28 U.S.C. § 2244(a); *see generally McCleskey v. Zant*, 499 U.S. 467, 496 (1991) (extending the abuse doctrine to capital cases).

Finally, the evidence is unnecessary to inform the court's cumulative error analysis, Petitioner's argument notwithstanding.  As the Tenth Circuit noted, the foregone social history evidence was essentially undisputed; therefore, an "evidentiary hearing was unnecessary for the district court . . . to conclusively resolve the issue of prejudice."  *Fields*, 949 F.3d at 1268.  Petitioner does not have latitude to present a new factual claim, more than a decade after finality of the judgment (*see* § 2255(f)), and evidence concerning the reasons for trial counsel's actions cannot inform the question of prejudice.  In any event, the Tenth Circuit stated that it could not resolve the cumulative error issue because it was remanding the organic brain damage claim, not because it would welcome piecemeal litigation of issues it had already decided.[3]  *See id*. at 1273.

### III.    Evidence Regarding the Petitioner's Naval Service and Prison Adjustment is Irrelevant to the Brain Damage Issue Before the Court

Petitioner also claims that evidence of his naval service and prison adjustment is relevant

---

[3] Petitioner argues that the government misstated the Tenth Circuit's holding by suggesting it found that trial counsel made a strategic decision to omit social history evidence.  The government stated only that the Tenth Circuit found that trial counsel "did not ineffectively omit social history."  Doc. 389 at 5.  This is an accurate statement, as counsel cannot be constitutionally *ineffective* if *Strickland's* prejudice prong is not met.  *See, e.g., Hawkins v. Hannigan*, 185 F.3d 1146, 1158 (10th Cir. 1999).

to his brain damage claim, as it shows his positive functioning in a structured environment. Doc. 390 at 10-11. As an initial matter, Petitioner never raised any of those arguments in his petition and cannot alter the contention at this late date. Beyond the matter of delay, the evidence at issue does not inform the brain damage claim. *See* Dec. of Art Cody, Def. Ex. 25; Dec. of Joseph Stanik, Def. Ex. 70; Dec. of Raymond Mach, Def. Ex. 69; Report of Maureen Baird, Ex. 27, Supp. Report of Maureen Baird, Ex. 241. According to Petitioner, the proffered testimony merely indicates he had a satisfactory service record in the navy and has been well-behaved in prison. Neither of those facts makes it more or less likely that he has structural deficiencies in his brain. At least as likely, such evidence shows that he has *no* brain dysfunction. Although the evidence might refute the other edge of the brain damage sword, in that it implies his future dangerousness, Petitioner never argued his counsel were ineffective for failing to challenge the dangerousness aggravator (*see* Doc. 389 at 6).

Of particular note, Petitioner proposes evidence from Maureen Baird, which appears to rely on two untenable assumptions: that Baird could have testified at trial or that she (or anyone else) could have discussed Petitioner's post hoc prison adjustment. Baird's declaration consists of conclusions about Petitioner's adjustment to the Bureau of Prisons custody—custody that had not begun when he was tried. Moreover, at the time of the Petitioner's trial, Baird had been a "Regional Correctional Programs Administrator" for five months. Before that, she had been an administrator and executive assistant in a Federal Correction Institution. Baird may now possess relevant experience from which to testify about Petitioner, but she certainly did not have it at the time of trial.[4]

---

[4] Petitioner attempts to draw a false equivalence between Baird's reliance on Petitioner's behavior in prison and Dr. Seward's consideration of similar information. Doc. 390 at 12. But Dr. Seward considered the Petitioner's behavior in prison in forming his opinion as a neuropsychologist as to

The social history and prison adjustment evidence has no relevance to the issues to be addressed in the evidentiary hearing and should, therefore, be excluded.

**IV.    The Testimony of Clipson and Kaufman is Irrelevant**

Finally, Petitioner claims he is not restricted to presenting what Gelbort would have said and can present testimony from Drs. Clipson's and Kaufman.  However, as discussed above, the amended petition framed the ineffectiveness claim around Gelbort and his potential rebuttal to the government's expert, Dr. Price.  Petitioner tries to avoid the limits of his own claim by asserting his motion referred to "any competent neuropsychologist.'"  Doc. 390 at 13.  Read in context, though, the phrase referred to Gelbort and Gelbort alone, for want of any other identified neuropsychologist:

> In addition, Dr. Gelbort's testimony was essential to rebut the testimony of Dr. Price, the Government rebuttal witness who told the jury that Mr. Fields did not suffer from brain dysfunction even though his own testing showed significant impairment. *See* TR, 3154; Price Report, at 21-25; *see also* Martell Report, pp. 12-13 (opining that Dr. Price's testimony was misleading and could have been rebutted by any competent neuropsychologist); App. 34.

2255 Doc. 106 at 29.

Martell may have believed that any other neuropsychologist could have rebutted Dr. Price, but trial counsel only had access to one at the time they made the decisions in dispute today.  Dr. Martell did not mention any other neuropsychologist and certainly did not identify Drs. Clipson and Kaufman.  The amended petition makes this clear in later passages, where the Petitioner alleges "trial counsel could have presented Dr. Gelbort in anticipation of or in rebuttal of Dr. Price's testimony," and counsel could have attacked Dr. Price "by presenting the testimony of Dr. Gelbort . . . ."  Doc. 106 at 42-43.  Indeed, the circuit court's discussion of Dr. Martell's criticisms

---

whether the Petitioner shows signs of brain dysfunction—information relevant to Petitioner's brain damage claim.  Baird's report offers no insight into Petitioner's mental health status.

of Dr. Price indicates that Petitioner was not arguing his attorneys should have retained these other experts. The circuit court noted that "Martell was only a post-conviction witness, and, as we have noted, [Petitioner] does not claim that O'Connell should have investigated and presented testimony from Martell. Rather, [Petitioner] argues only that [trial counsel] should have presented at trial expert testimony from Gelbort."

For want of any timely argument that counsel was ineffective for omitting the testimony of Clipson and Kaufman, their testimony cannot inform Petitioner's claim without a violation of the mandate rule or the many strictures on piecemeal § 2255 motions.

## CONCLUSION

For the reasons discussed herein, the Court should grant the Government's Motion *in limine* in full.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney
Eastern District of Oklahoma

*/S/ Christopher J. Wilson*
CHRISTOPHER J. WILSON, OBA # 13801
United States Attorney
520 Denison Ave
Muskogee, OK 74401
Telephone: (918) 684-5100
Fax: (918) 684-5150


*/S/ Aaron J. Stewart*
AARON J. STEWART OBA #31721
Trial Attorney, Capital Case Section
U.S. Dept. of Justice
1331 F Street, NW; Rm. 656
Washington, DC 20530
Telephone: (202) 353-0254
Fax: (202) 353-9779
aaron.j.stewart@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I, hereby certify that on August 29, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Hunter Labovitz, Attorney for Petitioner
Hayden Neslon-Major, Attorney for Petitioner
Katherine E. Ensler, Attorney for Petitioner

*/S/ Aaron J. Stewart*
Trial Attorney